UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MICHAEL ANDERSON,<br><br>            Plaintiff,<br><br>        v.<br><br>CAROLYN COLVIN, Commissioner of<br>Social Security,<br><br>            Defendant. | No.: 4:15-CV-5091-EFS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

        Before the Court are cross motions for summary judgment.
ECF Nos. 17 & 23. Plaintiff Michael Anderson appeals the denial of
benefits by the Administrative Law Judge (ALJ). ECF No. 17. Mr. Anderson
contends the ALJ erred because she (1) accepted the opinion of the
medical expert, but did not discuss and accept all of his opinions; (2)
erred in evaluating the opinions of the treating physician; (3) erred in
determining that Mr. Anderson could perform past relevant work; and (4)
improperly discredited Mr. Anderson's symptom testimony. ECF No. 17. The
Commissioner of Social Security ("Commissioner") asks the Court to affirm
the ALJ's decision that Mr. Anderson is capable of performing past
relevant work. ECF No. 23. After reviewing the record and relevant
authority, the Court is fully informed. For the reasons set forth below,
the Court remands for further proceedings.
/

ORDER - 1

**A.   Statement of Facts[1]**

Mr. Anderson was born in 1971. Transcript of admin. hrg. ("Tr.") at 30. He completed high school and two years of college. Tr. at 30. Mr. Anderson has been diagnosed with a number of physical conditions including degenerative disc disease, narrow foramenal stenosis of the neck, chronic neck and shoulder pain, congenital hypoplasia of the right thumb, right wrist pain stemming from a previous right wrist fracture, and right carpal tunnel syndrome. Tr. at 6–8, AR 301–559. Mr. Anderson manages his pain using a variety of medications including Hydrocodone, Flexeril (muscle relaxant), and Naproxyn (anti-inflammatory). Tr. at 20. Mr. Anderson also uses a heating pad and massage wand daily for his neck pain and attends physical therapy for his neck and wrist. Tr. at 16–17, 20. Mr. Anderson needs to lie down and take at least one nap daily to relax his neck. Tr. at 21–22.

According to Mr. Anderson's own testimony, he experiences significant neck pain on a daily basis. Tr. at 18 (rating his average daily pain at six or seven on a scale of ten). He notes that his neck and shoulder muscles cramp when he stands for long periods of time and lifting anything increases his pain. Tr. at 17. Mr. Anderson also explains that he has a limited range of motion in his neck and even sitting causes his neck to stiffen. Tr. at 19. Due to his thumb deformity and wrist pain, Mr. Anderson also struggles to pick up objects with his right hand and has pain in his right wrist every day. Tr. at

---

[1] The facts are only briefly summarized. Detailed facts are contained in the administrative hearing transcript, the ALJ's decision, the parties' briefs, and the underlying records.

ORDER - 2

15–17. Due to his pain, Mr. Anderson reports that he can no longer work like he used to or engage in recreational activities, such as playing basketball, with his children. Tr. at 18. He claims that he would only be able to sit or stand at a job for 30 minutes before needing a break. Tr. at 19. Mr. Anderson does note, however, that he sometimes goes to the park with his daughter. Tr. at 21. In his Function Reports, Mr. Anderson reported being able to shop occasionally, take the garbage out, do laundry, socialize with family, read, and watch television. Administrative Record (AR) at 231–33.

Mr. Anderson has some employment history. Tr. at 58–61. He worked retail at Costco from 1999 to 2005. AR at 253. Then, from 2005 to 2010, Mr. Anderson worked in a variety of positions, including as a phone operator, a construction laborer, a quality control worker at a food production company, and a janitor at a retirement home. AR at 253–63; Tr. at 58–61. Mr. Anderson reports encountering problems at his last job as a food production assembly line worker because he requested too many breaks. Tr. at 54. Mr. Anderson has not worked since November 2010. AR at 253.

**B.  Procedural History**

On March 12, 2012, Mr. Anderson protectively filed for Disability Insurance Benefits and Supplemental Insurance Benefits. AR at 170–185. His alleged onset date is November 1, 2010. AR at 170, 177. On July 5, 2012, Mr. Anderson's claim was denied. AR at 119–22. On October 24, 2012, reconsideration was denied. AR at 127–28.

On May 8, 2014, a hearing was held before ALJ Marie Palachuk. AR 36. Mr. Anderson; Anthony Francis, an independent medical expert; and K.

ORDER – 3

Diane Kramer, an independent vocational expert, testified. AR at 36. The ALJ determined that Mr. Anderson has the severe impairments of cervical spine degenerative disc disease with resulting chronic pain, status post right wrist fracture, and recent right-side carpal tunnel repair. AR at 23. The ALJ determined, however, that Mr. Anderson's impairments do not meet or medically equal the severity of any listed impairments. AR at 26. Despite his impairments, the ALJ also ultimately found that Mr. Anderson has the residual functional capacity to perform light work, except that he is further limited to (1) occasional lifting and carrying of up to 20 pounds and frequent lifting and carrying of up to 10 pounds; (2) standing and walking, with breaks, for only about six hours in an eight-hour workday; (3) sitting, with normal breaks, for about six hours in an eight-hour workday; (4) frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; (5) occasional climbing of ropes, ladders, or scaffolds; (6) occasional reaching overhead bilaterally; (7) occasional right non-dominant hand fingering and handling; and (8) avoiding concentrated exposure to temperature extremes and hazardous situations. AR at 26.

Based on this assessment, the testimony of the vocational expert, and Mr. Anderson's age, education, and work experience, the ALJ concluded Mr. Anderson can perform past relevant work as a food production worker and survey worker, and is therefore not disabled as defined by the Social Security Act. AR at 29.

On May 27, 2014, the Appeals Council denied review of the ALJ's decision. AR at 1–3. Mr. Anderson then filed this lawsuit, appealing the

ORDER - 4

ALJ's decision. ECF No. 3. Subsequently, the parties filed the instant summary judgment motions. ECF Nos. 17 & 23.

**C. Disability Determination**

A "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The decision maker uses a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

Step one assesses whether the claimant is engaged in substantial gainful activities during the relevant period. If he is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If he is not, the decision maker proceeds to step two.

Step two assesses whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step.

Step three compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404 Subpt. P App. 1, 416.920(d). If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be

ORDER - 5

disabled. If the impairment does not meet or equal one of the listed impairments, the evaluation proceeds to the fourth step.

Step four assesses whether the impairment prevents the claimant from performing work he has performed in the past. This includes determining the claimant's residual functional capacity. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant is able to perform his previous work, he is not disabled. If the claimant cannot perform this work, the evaluation proceeds to the fifth step.

Step five, the final step, assesses whether the claimant can perform other work in the national economy in view of his age, education, and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f); *see Bowen v. Yuckert*, 482 U.S. 137 (1987).

The burden of proof shifts during this sequential disability analysis. The claimant has the initial burden of establishing a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The claimant meets this burden if he establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). A claimant is disabled only if his impairments are of such severity that he is not only unable to do his previous work, but cannot — considering his age, education, and work experience — engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

ORDER - 6

**D.    Standard of Review**

On review, a court considers the record as a whole, not just the evidence supporting the ALJ's decision. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)). A court must uphold the ALJ's determination that the claimant is not disabled if the ALJ applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision. *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (citing 42 U.S.C. § 405(g)); *Brawner v. Sec'y of Health & Human Servs.*, 839 F.2d 432, 433 (9th Cir. 1987) (recognizing that a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance, *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). Any inferences and conclusions that the ALJ may reasonably draw from the evidence will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). A court must uphold the ALJ's decision, even if other rational interpretations exist. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).

//

/

ORDER - 7

**E. Analysis**

The Court addresses each of Mr. Anderson's challenges to the ALJ's decision.

**1.    Medical Expert - Dr. Francis**

Mr. Anderson contends that the ALJ erroneously failed to address parts of Dr. Francis's testimony, despite the ALJ's acceptance of Dr. Francis's testimony in full. ECF No. 17 at 4–5.

The ALJ assigned "significant weight" to Dr. Francis's opinions because he had an opportunity to objectively review all of the medical evidence in the record, specialized in the relevant area as an orthopedic surgeon, and his opinion was generally consistent with all treating and examining opinions in the medical record. AR at 28. The ALJ noted that the only opinion in the record that differed from Dr. Francis's was that of Dr. Prakash, Mr. Anderson's treating physician. AR at 28.

As a general rule, the ALJ "need not discuss all evidence presented to her," but "she must explain why significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (internal quotation marks omitted). When the ALJ accepts portions of a medical opinion, but rejects other portions, she must provide an explanation for the variable treatment. *Craig v. Astrue*, 269 F. App'x 710, 712 (9th Cir. 2008) (rejecting the ALJ's credibility determination in part because "the ALJ offered no reason why [the medical] opinion was persuasive in one regard, but not the other" (citing *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)); *Switzer v. Heckler*, 742 F.2d 382, 385–86 (7th Cir. 1984) ("[T]he

ORDER - 8

Secretary's attempt to use only the portions [of a report] favorable to her position, while ignoring other parts, is improper."). "The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *Robinson*, 366 F.3d at 1083.

Mr. Anderson argues that the ALJ improperly failed to consider portions of Dr. Francis's opinions, despite giving significant weight to his testimony and opinion as a whole. ECF No. 17 at 10-11. Specifically, Dr. Francis testified on cross-examination that he did not disagree with another professional's opinion in the record that Mr. Anderson may need to miss up to three days of work per month and would need to lie down occasionally during the day due to pain. Tr. at 14. When asked about the opinion, Dr. Francis stated:

> "I mean that can be reasonable. I mean we're looking at a document that's almost a year old now. That apparently was that doctor's opinion. I don't have any reason to disagree with it though at that time."

Tr. at 14. This statement alone may not carry significant force due to its equivocal nature, but the findings regarding Mr. Anderson's need to miss work and need to lie down were essential to the vocational expert's determination that Mr. Anderson could perform past relevant work. Tr. at 31-32. When questioned about whether an individual with Mr. Anderson's impairments could maintain employment if he needed to miss two or more days of work per month, the vocational expert indicated that such a person could not sustain competitive employment:

> Claimant's Attorney: Ms. Kramer, if an individual were to miss work, due to their impairments, how many days could they miss per month and

ORDER - 9

|   | | |
|---|---|---|
| | | still be able to sustain competitive employment? |
| Vocational Expert: | | Usual and customary is up to one per month within unskilled labor. |
| Claimant's Attorney: | | And if it's two or more per month, then they're most likely not going to be able to sustain competitive employment? |
| Vocational Expert: | | Correct. |

Tr. at 31. The vocational expert further indicated that lying down during the workday would not be tolerated in a work environment. Tr. at 32.

Because Dr. Francis's statement regarding Mr. Anderson's need to miss work and lie down throughout the day, in combination with the vocational expert's testimony, was significant probative evidence of Mr. Anderson's inability to maintain employment and, thereby, of Mr. Anderson's disability, the ALJ was required to provide a reason for rejecting that portion of Dr. Francis's testimony. The ALJ gave significant weight to Dr. Francis's testimony and opinion generally. AR at 28. Thus, without refuting — or at least acknowledging — Dr. Francis's statement that it was possible Mr. Anderson would need to miss work and lie down throughout the day, there was no substantial evidence for the ALJ to reasonably conclude that Mr. Anderson was able to maintain employment, and the ALJ's findings indicate she may have engaged in impermissible cherry-picking. *See Craig*, 269 F. App'x at 712.

Therefore, the Court remands the case back to the ALJ to determine whether Mr. Anderson would need to miss work more than one day a month or lie down throughout the day due to his impairments and, if so, whether Mr. Anderson is disabled.

ORDER - 10

### 2.    Treating Physician Dr. Prakash

Mr. Anderson contends that the ALJ failed to properly consider the opinion of his treating physician, Dr. Prakash. ECF No. 17 at 12–13.

The ALJ assigned "some weight" to Dr. Prakash's opinions because he was a treating source and his opinion was consistent with other opinions that Mr. Anderson could work at light levels, but had some right hand limitations. AR at 28. The ALJ noted that Dr. Prakash's opinion indicated Mr. Anderson could only lift and carry two pounds with his right upper extremity, but could carry 20 pounds with his left upper extremity and that Mr. Anderson could stand for six hours in an eight-hour workday. AR at 28.

There are three type of physicians: treating physicians, examining physicians, and nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* The ALJ must provide "clear and convincing" reasons for rejecting a treating or examining physician's opinions and may not reject such opinions without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Id.*

Mr. Anderson argues that the ALJ improperly failed to credit the opinion of Dr. Prakash without meeting the standard required in *Lester* when the ALJ did not expressly find that Mr. Anderson could only lift two pounds with his right hand. ECF No. 17 at 12–13. As the petitioner notes, however, the ALJ did not reject Dr. Prakash's opinion. ECF No. 17 at 12–13. In fact, it is not clear that the ALJ's findings are inconsistent

ORDER – 11

with Dr. Prakash's opinion. AR at 26. The ALJ found that Mr. Anderson could lift 20 pounds occasionally and 10 pounds frequently, but did not distinguish between Mr. Anderson's use of his right and left hands. AR at 26.

Mr. Anderson contends that the ALJ's failure to distinguish between the functioning of Mr. Anderson's hands was problematic because the ALJ's hypothetical given to the vocational expert did not differentiate between Mr. Anderson's ability to lift with each hand. It is true that "the hypothetical posed must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002). Although the hypothetical did not distinguish between Mr. Anderson's ability to lift with each hand, the ALJ accounted for the different functioning levels of Mr. Anderson's hands by including limitations on Mr. Anderson's ability to handle and finger with the right hand. Tr. at 30–31.

Accordingly, the Court finds that the ALJ did not err with respect to her consideration of Dr. Prakash's opinion and that the ALJ's hypothetical given to the vocational expert adequately described Mr. Anderson's impairments.

### 3. Past Relevant Work Analysis

Mr. Anderson also contends that in addition to the stage four errors in the ALJ's analysis outlined above in Section 1, the ALJ committed factual and legal errors in evaluating whether Mr. Anderson had past relevant work to which he could return. ECF No. 17 at 14–17. Mr. Anderson claims that the two jobs identified by the vocational expert as jobs to which Mr. Anderson could return — food production

ORDER – 12

worker and survey worker — are not qualifying past relevant work because they were not performed at "substantial gainful activity levels." ECF No. 17 at 14.

In order for a position to qualify as substantial gainful activity in 2009 and 2010 — the years Mr. Anderson was working as a food production worker or survey worker — an individual had to earn $980 per month and $1000 per month, respectively, in that position. Social Security Administration, Program Operations Manual Systems, Tbl. DI 10501.015. To assess whether a position constitutes substantial gainful activity, the Social Security Administration Operations Manual notes that in calculating gross earning, it is essential to: "Develop enough evidence to determine the actual period worked and the earnings for that period." Social Security Administration, Program Operations Manual Systems, DI 10505.001(B)(1).

Mr. Anderson argues that he did not earn enough as a food production worker or survey worker to meet the earning requirement for substantial gainful activity. ECF No. 17 at 14–17. The Commissioner seems to concede that Mr. Anderson's former position as a survey worker did not qualify as substantial gainful activity. ECF No. 23 at 11–13. The Commissioner contests, however, whether the food production worker position qualifies. ECF No. 23 at 11–13.

The record contains conflicting reports about how long Mr. Anderson worked as a food production worker. Mr. Anderson worked in that position as part of his employment with a temp agency, Manpower International Inc. According to Mr. Anderson's work history report, he worked at the temp agency from June 2008 through September 2010. AR 253.

ORDER - 13

In another filing, Mr. Anderson noted that during his time with the temp agency he worked "mostly at Lamb Weston quality control packaging hash browns" but also worked other jobs. AR 255. In his testimony before the ALJ, Mr. Anderson indicated that he worked at Lamb Weston for only 90 days total. Tr. at 59. Mr. Anderson's earning statements from Manpower International do not distinguish between different job placements and include only a total for each year of employment with the agency. AR 190-92.

When calculating his average monthly earnings while working at Lamb Weston, Mr. Anderson divided the total amount earned at Manpower for each year by the number of months he worked for Manpower International that year. Using such a calculation, Mr. Anderson determined that he earned $213.16 per month in 2009 and $207.50 per month in 2010. ECF No. 17 at 16. The Commissioner used a different calculation, dividing the total amount Mr. Anderson earned at Manpower International from 2009 and 2010 by the three months Mr. Anderson testified that he worked at Lamb Weston. ECF No. 23 at 12. Using this calculation, the Commissioner determined that Mr. Anderson earned $1,475 per month during his time at Lamb Weston. ECF No. 23 at 12.

Both of these methods of calculation are flawed. Without knowing which time periods Mr. Anderson spent working at Lamb Weston, rather than at Manpower International generally, it is impossible to determine the amount of his Manpower International earnings that are attributable to his work at Lamb Weston. Moreover, as demonstrated by the significant discrepancy between Mr. Anderson's calculation and the Commissioner's calculation, it is impossible to determine how much Mr. Anderson earned

ORDER - 14

per month during his time at Lamb Weston without evidence of how long Mr. Anderson actually worked there. With the contradicting and incomplete evidence in the record, it is impossible to determine whether Mr. Anderson's position as a food production worker qualified as substantial gainful activity.

Therefore, the Court remands the case back to the ALJ to determine how long Mr. Anderson worked at Lamb Weston and how much he earned during that time. Then, the ALJ shall determine whether Mr. Anderson's position as a food production worker qualified as substantial gainful activity.

**4. Mr. Anderson's Testimony**

Mr. Anderson argues the ALJ's credibility assessment is legally insufficient because when the ALJ determined that Mr. Anderson was not fully credible, she did not demonstrate that the medical evidence was inconsistent with Mr. Anderson's testimony or that Mr. Anderson's activities were inconsistent with his claims.

A two-step analysis is used by the ALJ to assess whether a claimant's testimony regarding subjective pain or symptoms is credible. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). Step one requires the ALJ to determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007); *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Objective medical evidence of pain or fatigue, or the severity thereof, need not be provided by the claimant. *Garrison*, 759 F.3d at 1014.

ORDER - 15

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ must accept the claimant's testimony about the severity of his symptoms unless the ALJ provides specific, clear, and convincing reasons for rejecting the claimant's testimony. *Id.* An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). To discredit a claimant's testimony when a medical impairment has been established, however, the ALJ must provide specific, cogent reasons for the disbelief. *Id.* Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. *Id.*

Here, the ALJ found that Mr. Anderson did suffer from severe musculoskeletal impairments and recognized that his impairments could cause the alleged symptoms. AR at 26–27. She then determined, however, that Mr. Anderson's statements concerning the intensity, persistence, and effects of his symptoms were not fully credible. AR at 27. The ALJ explained that the medical opinions did not support the level of limitation alleged by Mr. Anderson because the opinions supported an ability to perform light work. AR at 27. In addition, the ALJ concluded that Mr. Anderson's reported activities of daily living did not support the level of limitation claimed because Mr. Anderson "cares for his children and accompanies his daughter on outings to the park," and he submitted Function Reports indicating that he could "cook simple meals,

ORDER - 16

shop, do laundry, socialize, read, and likes to watch sports related television." AR at 27.

The explanation provided by the ALJ for rejecting Mr. Anderson's testimony does not include the kind of "clear, convincing, and specific reason[s]" required to discredit a social security claimant. *Garrison*, 759 F.3d at 1016. The ALJ did not explain how Mr. Anderson's claims differed from the level of functioning described by the medical opinions, stating only "claimant's subjective complaints are partially credible because medical opinions addressed above do not support the level of limitations alleged." The ALJ noted an inconsistency with the physical therapist's opinion that Mr. Anderson could perform light to medium work, AR at 27, but subsequently noted that she was giving the physical therapist's opinion "little weight." AR at 28. The ALJ also cited to opinions by Dr. Francis and Dr. Valencia that Mr. Anderson could perform light work as evidence of inconsistency, AR at 27, but the ALJ later noted that she only gave Dr. Valencia's opinion "some weight" because it was "silent as to any residual right hand limitations which discounts its probative value in this case." AR at 28. Accordingly, if Mr. Anderson's alleged severity of symptoms was inconsistent with the opinions of the physical therapist and Dr. Valencia, given the low weight attributed to each expert's opinion it is unclear that such an inconsistency is sufficient to discredit Mr. Anderson.

Although the ALJ gave Dr. Francis's opinion significant weight, it is important to note that Dr. Francis did not unequivocally state that a light level of work was appropriate. Dr. Francis stated: "Most RFCs [residual functional capacities] in a chronic pain case are going to fall

either light, sedentary or less than sedentary." Tr. at 8. Dr. Francis

concluded that "probably a light RFC would be appropriate here, but I'm

willing to discuss it." Tr. at 9. It is therefore unclear whether there

is a meaningful inconsistency between Dr. Francis's opinion and Mr.

Anderson's testimony so as to justify discrediting Mr. Anderson.

It is also unclear that Mr. Anderson's described daily activities

are inconsistent with the level of impairment alleged. While the ALJ

stated that Mr. Anderson could "cook simple meals," Mr. Anderson

specifically noted in his Function Report that he did not cook at all,

stating: "[I]t is painful to stand over the stove for a long period of

time, so my mother prepares all the meals." AR at 231. There is no

contradictory evidence in the record to suggest that Mr. Anderson cooks.

In addition, the ALJ noted that Mr. Anderson cares for his children, but

there is no indication in the record that Mr. Anderson performs childcare

activities. Mr. Anderson indicated that he lives alone and does not

reside with his children. AR at 178. In his Function Report, Mr. Anderson

reported that he does not care for any children. AR at 230. Mr. Anderson

testified that he is no longer able to play with his sons, but did not

say anything regarding care of his children. Tr. at 18.

Mr. Anderson did indicate in his testimony that he walks with his

daughter to the park occasionally, Tr. at 21, but that is not

inconsistent with his Function Report statement that he can walk about a

half of a mile before resting and then only needs to rest for five

minutes. AR at 234. Mr. Anderson also indicated in his Function Reports

that he could take the garbage out and does laundry, but that it "takes

[him] a little longer than it use to" and he only performs those

ORDER - 18

activities about twice a week. AR at 231. Mr. Anderson indicated the he does not do any other housework "like dishes or yardwork" because "standing and movement in neck is too painful to do for an extended period." AR at 232. Mr. Anderson also indicated that he shops, but only once a month for about an hour. AR at 232. Although Mr. Anderson also indicated that he likes to read and watch sports on television, he also noted that he has to take breaks from those activities in order to "give [his] neck a rest from being in one position." AR at 233. Mr. Anderson also testified that he needs to nap at least once a day and massage his neck throughout the day in order to relax his neck muscles. Tr. at 21–22.

It is important to recognize that "many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Smolen*, 80 F.3d at 1284 n.7; *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[M]any home activities are not easily transferable to what may be the more grueling environment of the workplace[.]"). "[I]mpairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016. Accordingly, the ability to perform some tasks that are consistent with tasks performed at a job does not necessarily mean that an individual is able to perform those tasks on a consistent basis in a work environment.

In this case, Mr. Anderson's described activities — doing laundry twice a week, taking out the trash twice a week, shopping once a month, reading and watching television with periodic breaks, and occasionally taking his daughter to the park — do not necessarily demonstrate an

ORDER - 19

ability to work eight hours a day in a work environment. As discussed above in Section 1, Mr. Anderson would not be able to take frequent breaks or naps at work. His ability to perform tasks twice a week is not evidence of an ability to perform similar tasks repeatedly throughout the day. The Commissioner claims that Mr. Anderson's testimony regarding difficulty using his right hand is inconsistent with doing laundry, ECF No. 23, at 7, but there is no evidence that Mr. Anderson uses his right hand when doing laundry. The Commissioner also argues that Mr. Anderson's ability to accompany his daughter to the park is inconsistent with his claim that he has difficulty sitting or standing for more than 30 minutes, ECF No. 23, at 7, but there is no evidence that Mr. Anderson must sit or stand for more than 30 minutes without a break during such outings. Accordingly, the evidence clearly indicates that Mr. Anderson's described daily activities are consistent with the severity of the symptoms alleged.

Therefore, the Court remands the case back to the ALJ to make specific findings as to whether Mr. Anderson's alleged impairment is inconsistent with medical opinions to which the ALJ has given weight and then consider whether Mr. Anderson is disabled, giving appropriate credit to Mr. Anderson's testimony.

**C.    Conclusion**

For the above-given reasons, the Court remands the case for further proceedings. Although the Court holds that the ALJ erred, it is not clear from the record, as it currently stands, whether Mr. Anderson is disabled or whether he has qualifying past relevant work to which he could return. The ALJ shall consider Dr. Francis's statement regarding

Mr. Anderson's possible need to lie down during the work day or miss work due to pain. In addition, the ALJ shall consider whether Mr. Anderson's position as a food production worker met the standard for substantial gainful activity. The Commissioner has conceded that Mr. Anderson's position as survey worker did not meet that standard, so an additional consideration of that position is unnecessary. The ALJ shall also reevaluate Mr. Anderson's credibility given the Court's determination that Mr. Anderson's daily activities are not inconsistent with the level of impairment alleged.

The Court holds that the ALJ did not fail to properly consider Dr. Prakash's opinion. Therefore, the ALJ does not need to reevaluate or reweigh that opinion.

////
////
////
////
////
////
////
////
////
////
////
///
//
/

ORDER — 21

Accordingly, **IT IS HEREBY ORDERED:**

1.    Mr. Anderson's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED IN PART and DENIED IN PART.**

2.    The Commissioner's Motion for Summary Judgment, **ECF No. 23**, is **DENIED**.

3.    This matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

4.    The Clerk's Office is to enter **Judgment** in favor of Mr. Anderson.

5.    An application for attorney fees may be filed by separate motion by Mr. Anderson.

6.    The case shall be **CLOSED.**

**IT IS SO ORDERED.** The Clerk's Office is directed to enter this Order and provide copies to counsel and ALJ Marie Palachuk.

**DATED** this 27th day of September 2016.


                    _____s/Edward F. Shea_____
                         EDWARD F. SHEA
                 Senior United States District Judge

Q:\EFS\Civil\2015\5091.ord.grant.p.sj.lc02.docx

ORDER - 22